IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CARL SCHWIRZINSKI, | ) | |
| | ) | CASE NO. 3:15CV214 |
| | ) | |
| Petitioner, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| JASON BUNTING, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Carl Schwirzinski ("Petitioner" or "Schwirzinski") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Schwirzinski is detained at the Marion Correctional Institution, having been found guilty by a Wood County, Ohio, Court of Common Pleas jury of one count of rape of a victim under the age of ten and two counts of gross sexual imposition.  Doc. 5-2, p. 10.[1]  *State v. Schwirzinski*, Case No. 200CR0322 (Wood Cty. Common Pleas Ct. filed June 8, 2008).  On June 8, 2009, the trial court sentenced Schwirzinski to life in prison without the possibility of parole on the rape count and five years in prison on each gross sexual imposition count, to be served consecutively, for an aggregate sentence of life in prison without the possibility of parole and an additional ten years.  Doc. 5-2, p. 13.  The court also classified Schwirzinski as a Tier III sex offender.  Doc. 5-2, p. 13.

On January 17, 2015, Schwirzinski filed his Petition for Writ of Habeas Corpus setting forth five grounds for relief.  Doc. 1, pp. 5-16.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Schwirzinski's Petition is barred by the statute of limitations.  Thus, the

---

[1] Doc. page citations are to ECF Doc. page numbers.

1

undersigned recommends that Schwirzinski's Petition for Writ of Habeas Corpus (Doc. 1) be **DISMISSED**.

## I. Factual Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008), cert. denied, 129 S. Ct. 2878 (2009). The Wood County Court of Appeals, Sixth Appellate District of Ohio, set forth the facts as follows:[2]

> {¶ 2} Appellant is Carl Schwirzinski. On June 11, 2008, appellant picked up then seven-year-old C.R. from her mother's home for a planned two day play date with a child of a similar age who lived near appellant. Appellant, known to C.R. as "Grandpa Carl," had been a companion of C.R.'s grandmother for a number of years and had previously transported the girl to church and family outings.
>
> {¶ 3} When the child with whom C.R. was to have played went elsewhere with her mother, appellant took C.R. swimming and to a family gathering. C.R. spent the night at appellant's home and went swimming again the next day. That afternoon, appellant returned C.R. to her home.
>
> {¶ 4} According to C.R.'s mother, after appellant left, C.R. told her that Grandpa Carl had "touched her in a bad place." C.R.'s mother's fiancé was also present.
>
> {¶ 5} The fiancé would later testify that, on hearing this, C.R.'s mother became upset and left the house to try to call her mother. At that point, the fiancé testified, C.R. reported that, as soon as she left the house with appellant the day before, he began to touch her between the legs and had "peed" on her.
>
> {¶ 6} After consulting with a friend, C.R.'s mother and her fiancé decided to seek medical attention for the girl. The fiancé collected the clothing C.R. had brought back with her and the two took C.R. to a Toledo hospital.
>
> {¶ 7} At the hospital, C.R. was examined by a physician and a Sexual Abuse Nurse Examiner ("SANE"). At trial, the SANE nurse testified that, at her initial medical

---

[2] The facts are taken from the Sixth District Court of Appeals' decision *State v. Schwirzinski*, No. WD-09-056 (Ohio Ct. App. Nov. 12, 2010); 2010 WL 4546672 (Ohio Ct. App. Nov. 12, 2010). Schwirzinski has not demonstrated by clear and convincing evidence that the state court's factual findings were incorrect. Accordingly, the state court's findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

2

interview, C.R. told her appellant put his leg over her and put his bad part on her bad part. C.R. also reported to the nurse that appellant directed her to bend over a bed while he began shaking, then "peed" on her back.

{¶ 8} An external examination revealed redness in C.R.'s vaginal area, but the child was too agitated to obtain a full rape kit. By the time the examination was completed, a detective from the Perrysburg Township Police arrived. The officer re-interviewed C.R. and collected the biological evidence and C.R.'s clothing for analysis.

{¶ 9} Appellant was arrested and, on June 19, 2008, named in a three count indictment charging him with rape, with a victim under age ten specification, and two counts of gross sexual imposition. Appellant pled not guilty and the matter proceeded to trial before a jury.

{¶ 10} At trial, C.R. testified that appellant "peed on my back * * * and when I was sleeping he put his bad part in my butt." Asked to elaborate, the girl testified that she was on her knees with her head down with appellant standing behind her when he pulled up her shirt and was "shaking around" and "[t]here is stuff dripping down." C.R. described the stuff dripping as "hot" and "nasty."

{¶ 11} Concerning the other incident, C.R. testified that she was in bed, on her side, "sleeping, but I wasn't really sleeping. I woke up," when appellant "put his bad part in my butt[.] * * * It hurt."

{¶ 12} C.R. also reported incidents "in the car [appellant] told me to open my leg [sic] and he touched my bad part" and on a couch "[w]hen I gave him a hug, he pushed me back and forth." C.R. demonstrated the same pelvic motion for the back and forth motion on the couch as when appellant "peed" on her.

{¶ 13} The state also presented forensic analysis of a stain found on the back of one of C.R.'s shirts. An analyst testified that the substance was semen, but contained no identifiable sperm which would be needed to identify the DNA of its source. The DNA that was found in the stain was a mixture belonging to C.R., her mother's fiancé and appellant. By far the largest contributor, the analyst testified, was appellant. In the analyst's opinion, this meant that appellant was the likely source of the semen. At the conclusion of the state's case, the court denied appellant's Crim.R. 29 motion.

{¶ 14} In his defense, appellant called a DNA expert who testified that it was not scientifically possible to determine the source of a mixed sample solely on the basis of the individual in the sample with the most pronounced signature. Appellant also called a psychologist who testified that the perceptions of small children were frequently erroneous. Several persons who saw C.R. during the time that she was with appellant testified she appeared to be happy and unaffected when observed. Prior to submission of the matter to the jury, the trial court again rejected appellant's motion for a judgment of acquittal.

*State v. Schwirzinski*, 2010 WL 4546672 (Ohio Ct. App. Nov. 12, 2010).

## II. Procedural Background

### A. State Trial Court

On June 19, 2008, a Wood County Grand Jury indicted Schwirzinski on one count of rape of a victim under age ten, Ohio Rev. Code § 2907.02(A)(1)(b), and two counts of gross sexual imposition of a victim under age thirteen, R.C. § 2907.05(A)(4). Doc. 5-2, p.1. Schwirzinski, through counsel, pleaded not guilty. Doc. 5-2, p. 3. The case proceeded to trial, and, on June 3, 2009, a jury found Schwirzinski guilty of all charges. Doc. 5-2, pp. 9-10. On June 8, 2009, the trial court sentenced Schwirzinski to life without parole on the rape count and five years in prison on each gross sexual imposition count, to be served consecutively, for an aggregate sentence of life in prison without the possibility of parole and an additional ten years. Doc. 5-2, p. 13. The court also classified Schwirzinski as a Tier III sex offender. Doc. 5-2, p. 13.

### B. Direct Appeal

On July 6, 2009, Schwirzinski, through counsel, appealed to the Ohio Court of Appeals. Doc. 5-2, p. 15. He presented the following assignments of error:

> 1. The trial court committed error and Appellant was denied his constitutional rights to fair trial and due process when the court overruled Appellant's motions for judgment of acquittal.
>
> 2. Appellant's rights to fair trial and due process were violated when he was convicted on Counts 2 and 3 of the indictment despite the fact that there was insufficient evidence to support conviction on either of those counts and the convictions were against the manifest weight of the evidence.
>
> 3. Appellant was denied his constitutional rights to fair trial and due process when the jury was permitted to return patchwork and non-specific verdicts.
>
> 4. Numerous instances of inadmissible hearsay testimony in violation of the evidence rules and the Sixth and Fourteenth Amendments to the United States Constitution deprived Mr. Schwirzinski of a fair trial.

> 5. Appellant's constitutional right to effective assistance of trial counsel was violated by defense counsel's numerous failures to protect Appellant's rights, make timely objections and otherwise advocate on behalf of Appellant.

Doc. 5-2, p. 22. On November 12, 2010, the state Court of Appeals reversed Schwirzinski's conviction on the second gross sexual imposition count and affirmed the balance of the judgment of the trial court.[3] Doc. 5-2, pp. 127-145.

### C. Ohio Supreme Court

On December 22, 2010, Schwirzinski, through counsel, appealed to the Ohio Supreme Court. Doc. 5-2, p. 148. He raised the following propositions of law:

> 1. A criminal defendant is denie[d] his constitutional rights to fair trial and due process when a jury is permitted to return patchwork and non-specific verdicts.
>
> 2. When there is no evidence presented as to an element of the offense, and when the only person to testify who has knowledge of whether that element existed denies it, the evidence of guilt on that count is insufficient and the conviction must be vacated.
>
> 3. A conviction supported in large part by hearsay and other testimony inadmissible under the Confrontation Clause is obtained in violation of a defendant's rights under the Sixth and Fourteenth Amendments to the United States Constitution.
>
> 4. When trial counsel's performance is objectively deficient and when there is a reasonable probability that had counsel been competent the outcome of the trial would have been different, the defendant is denied his constitutional right to effective assistance of counsel.

Doc. 5-2, p. 152. On March 16, 2011, the Ohio Supreme Court denied the appeal as not involving any substantial constitutional question. Doc. 5-2, p. 185.

### D. State Post-conviction Petition

On March 12, 2010, while his direct appeal was pending, Schwirzinski, through counsel, filed a petition for post-conviction relief in the state trial court. Doc. 5-2, p. 188. He argued that juror misconduct denied him his right to a fair trial, adjudication by a neutral factfinder, and due

---

[3] Pursuant to the remand order, the trial court acquitted Schwirzinski of one count of gross sexual imposition and vacated the attendant five year sentence. Doc. 5-2, pp. 135, 186.

process. Doc. 5-2, pp. 190-191; *State v. Schwirzinski,* No. WD-10-082, 2012 WL 3253957 at * 1 (Ohio Ct. App. Aug. 10, 2012). He also argued that his counsel was ineffective for failing to make a timely request at trial for an in camera inspection of the victim's prior statement. Doc. 5-2, pp. 192-194.

The state filed a motion for summary judgment. Doc. 5-2, p. 203. The trial court ordered the state to produce the victim's prior statement for an in camera inspection. Doc. 5-2, p. 215. On November 19, 2010, the trial court granted the state's motion for summary judgment and dismissed Schwirzinski's petition for post-conviction relief. Doc. 5-2, p. 220. The court concluded that the jurors' actions did not rise to the level of a constitutional violation or entitle Schwirzinski to a new trial. Doc. 5-2, pp. 218-219. The court also found that Schwirzinski was not prejudiced by counsel's failure to move the court for an in camera inspection because the victim's prior statement contained "only two minor differences" from her testimony, "neither of which would have had any impact during the trial had defense counsel been permitted to cross examine the child witness thereon." Doc. 5-2, pp. 219-220.

On December 17, 2010, Schwirzinski, through counsel, filed an appeal to the Ohio Court of Appeals. Doc. 5-3, p. 1. He raised the following assignments of error:

> 1. The trial court committed error when it failed to hold an evidentiary hearing to determine whether a juror's misconduct in failing to respond honestly to a material question on voir dire violated appellant's rights under the constitutions of the United States and the state of Ohio.
>
> 2. The trial court committed error when it failed to conduct an evidentiary hearing to determine whether a juror's misconduct in hearing opinions on appellant's guilt from a non-juror and failing to report the improper communication to the court was prejudicial to appellant's rights under the constitutions of the United States and the state of Ohio.

Doc. 5-3, p. 9. On August 10, 2012, the state Court of Appeals affirmed the trial court's judgment. Doc. 5-3, pp. 57-64. Schwirzinski did not file an appeal to the Ohio Supreme Court.

### E. Application for Reopening Appeal

6

On August 28, 2013, Schwirzinski, through new counsel, filed an application to reopen his appeal pursuant to Ohio App. Rule 26(B).  Doc. 5-3, p. 67.  Schwirzinski argued that his appellate counsel was ineffective for failing to raise the following assignments of error:

> 1.  The trial court errantly deprived Mr. Schwirzinski of a meaningful sentencing hearing, in violation[n] of Ohio law and of the United States Constitution and fundamental fairness, by incorrectly assuming that the only possible sentence was life without parole, thereby not considering life with parole after fifteen (15) years.
>
> 2.  Mr. Schwirzinski was deprived the effective assistance of counsel when counsel also assumed that the only statutorily available sentence was life without parole, not arguing for life with parole after 15 years.
>
> 3.  The conviction for Count 1 (Rape) was not supported by sufficient evidence.
>
> 4.  The conviction for Count 1 (Rape) was against the manifest weight of the evidence.
>
> 5.  The trial court erred by converting the verdict for Count III of guilty of gross sexual imposition as a felony of the fourth degree to a conviction for gross sexual imposition as a felony of the third degree.

Doc. 5-3, pp. 70-74.  For cause for his failure to timely file his Rule 26(B) application, Schwirzinski asserted that he did not become aware of appellate counsel's deficiencies until he retained new counsel.  Doc. 5-3, p. 70.  On October 10, 2013, the Ohio Court of Appeals denied Schwirzinski's application as "untimely and without good cause for delay."  Doc. 5-3, p. 94.

On October 31, 2013, Schwirzinski, through counsel, appealed to the Ohio Supreme Court.  Doc. 5-3, p. 97.  He raised one proposition of law:

> If ineffective appellate counsel also represents the Appellant in appealing the decision of an appeals court to the Ohio Supreme Court, then the deadline to file an application for reopening upon the basis of ineffective assistance of appellate counsel shall be liberally and freely extended to the deadline for filing a habeas petition in federal court from that conviction pursuant to the A.E.D.P.A.

Doc. 5-3, p. 100.  On January 22, 2014, the Ohio Supreme Court declined jurisdiction.  Doc. 5-3, p. 128.

7

**F. Federal Habeas Petition**

On January 17, 2015, Schwirzinski, *pro se*, filed a Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following grounds for relief:

**Ground One:** Ineffective assistance of trial counsel.

**Supporting facts**: Counsel did not properly challenge DNA evidence, object to hearsay testimony, did[]not object to erroneous jury instructions, conduct proper voir dire or otherwise advocate vigorously on behalf of this petitioner in violation of the 5th, 6th and 14th Amendments

**Ground Two:** Insufficient evidence.

**Supporting facts**: No credible evidence exists whatsoever to support any conviction and all R.29 motions should have been granted. Even the DNA evidence, when properly interpreted supports acquittal of all charges. Even the Court of Appeals recognized insufficient evidence on several counts but did not go far enough. All of which violates this petitioner's consti[tuti]onal rights under the 5th and 14th amendments.
\* Even indictment said vaginal rape yet at trial anal was argued.

**Ground Three:** Non[-]specific and patchwork verdicts

**Supporting facts**: Non-credible evidence was adduced of various possibilities as to each count and there is no way to distinguish what evidence supports what charge if at all. All of which supports the contention this petitioner's constitutional right to a fair trial and the due process of law under the 5th and 14th amendments were violated.

**Ground Four:** Conviction obtained through use of hearsay testimony

**Supporting facts**: Trial court admitted numerous statem[e]nts allegedly made to the alleged victim's mother, her mother's fiance, the investigating officer and the SANE nurse by the alleged victim in violation of the 5th and 14th amendments guarantee to a fair trial and the due process of law and the 6th amendment guarantee under the confrontational clause

**Ground Five:** Juror Misconduct

**Supporting facts**: Two jurors committed misconduct during deliberations and also either lied at voir dire or did not properly follow instructions given by the court. One juror received an outside opinion of the petitioner's guilt by phone which she shared with the rest o[]f the jury. The other juror, after being sworn not to find prejudice against this petitioner for not testifying, argued to the other jurors that he should be required to testify. Such misconduct deprived this

> petitioner of his constitutional right to a fair trial and the due process of law under the 5th and 14th amendments of the constitution. The trial court compounded this error by refusing to hold an evidentiary hearing.

Doc. 1, pp. 5-16. Respondent filed a Motion to Dismiss, arguing that Schwirzinski's Petition is barred by the statute of limitations. Doc. 5. Schwirzinski filed an opposition (Doc. 8) and a Supplement in support (Doc. 9). Upon the Court's Order, Respondent filed a Reply (Doc. 11). Schwirzinski, without leave of Court, filed a Sur-Reply (Doc. 12).

## II. Law and Analysis

### A. AEDPA Statute of Limitations

Respondent contends that Schwirzinski's Petition is barred by the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1). The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244, limits the time within which a person in custody pursuant to the judgment of a state court may file a petition for a federal writ of habeas corpus and provides, in relevant part:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation shall run from the latest of—
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

The statute of limitations is tolled for any period of time in which a properly filed petition for post-conviction relief is pending before the state courts. *Jurado v. Burt*, 337 F.3d 638, 640 (6th Cir. 2003) (citing 28 U.S.C. § 2244(d)(2)). This statutory tolling provision, however, does not "revive the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) (internal quotations and citation omitted).

"An application for post-conviction or other collateral review is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings, e.g., requirements concerning the form of the document, the court and office in which it must be lodged, payment of a filing fee, and applicable time limits upon its delivery." *Israfil v. Russell*, 276 F.3d 768, 771 (6th Cir. 2001) (citing *Artuz v. Bennett*, 531 U.S. 4, 8-10 (2000)). A post-conviction petition deemed untimely pursuant to Ohio law is not "properly filed" and, therefore, does not toll the statute of limitations. *Id.* at 771-772; *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005) (a petition is not "properly filed" when the state courts reject it as untimely pursuant to state law).

**B. Schwirzinski's Petition is Barred by the One-Year Statute of Limitations**

The one-year statute of limitations began to run when Schwirzinski's case became final. 28 U.S.C. § 2244(d)(1)(A).[4] Schwirzinski's case became final on June 14, 2011, ninety days after the Ohio Supreme Court denied review in his direct appeal on March 16, 2011. *See* Doc. 5-2, p. 185; *Lawrence v. Florida*, 549 U.S. 327, 333 (2007) (a case becomes final under §

---

[4] Schwirzinski does not assert that any other provision in § 2244(d) applies to his Petition. Even if §2244(d)(1)(D) could apply to his ground regarding juror misconduct, that claim is time-barred for the same reasons, described below, that his Petition is untimely under § 2244(d)(1)(A) and (d)(2).

10

2244(d)(1)(A) when the 90-day time period for filing an appeal to the United States Supreme Court expires); *Bronaugh v. Ohio*, 235 F.3d 280, 283-284 (6th Cir. 2000).

However, at that time, Schwirzinski's state petition for post-conviction relief was pending and further tolled the limitations period while it was pending. *Jurado*, 337 F.3d at 640; § 2244(d)(2). The Ohio Court of Appeals affirmed the trial court's decision denying Schwirzinski's petition on August 10, 2012. Doc. 5-3, p. 238. He did not appeal to the Ohio Supreme Court. Under § 2244(d)(2), unlike §2244(d)(1), the statute of limitations is not tolled for the time period within which a defendant can file an appeal if the defendant does not file a timely appeal. *See Evans v. Chavis*, 546 U.S. 189, 191 (2006) ("The time that an application for state postconviction review is 'pending' includes the period between (1) a lower court's adverse determination, and (2) the prisoner's filing of a notice of appeal, *provided that* the filing of the notice of appeal is timely under state law." (emphasis in original)); *Ross v. McKee*, 465 Fed. App'x 469 (6th Cir. Feb. 28, 2012) (limitations period begins to run when the last state court denied review, in the absence of a timely filed petition); *Forbes v. Curtin*, 2014 WL 771090, at *4 (W.D.Mich. Feb. 26, 2014) (same). *But see Boddie v. Warden, Chillicothe Corr. Inst.*, 2015 WL 127957, at *1 (S.D.Ohio Jan 08, 2015) (limitations period tolled during the time the defendant could have, but did not, appeal a state court decision denying his post-conviction petition). Because Schwirzinski did not timely appeal the Ohio Court of Appeals' decision, the limitations period began to run the day after the Ohio Court of Appeals issued its decision— August 11, 2012—and expired on August 11, 2013. *Bronaugh*, 235 F.3d at 285 (the statute of limitations begins to run the day after the triggering event, citing Fed. R. Civ. Pro. 6(a)).[5]

---

[5] The undersigned notes that even if the limitations period was tolled during the 45-day time period within which Schwirzinski could have appealed the Ohio Court of Appeals' decision to the Ohio Supreme Court, the outcome in this case would be the same, i.e., his federal habeas petition is untimely.

Schwirzinski did not file his federal habeas Petition until January 17, 2015, nearly a year and a half after the one-year statute expired.

Although Schwirzinski filed a Rule 26(B) Application to Reopen on August 28, 2013, that filing did not toll the limitations period for two reasons. First, because his Rule 26(B) Application was filed after the limitations period had expired on August 11, 2013, it did not toll the limitations period. *See* Vroman, 346 F.3d at 602 (upon the expiration of the limitations period, a state collateral petition will not toll the statute of limitations per § 2244(d)(2)). Second, Schwirzinski's Rule 26(B) Application was denied by the Ohio Court of Appeals as untimely (Doc. 5-3, p. 94) and, therefore, for this separate reason, it cannot toll the limitations period. *See* Pace, 544 U.S. at 417 (a petition is not "properly filed" and cannot toll the limitations period if the state court rejects it as untimely pursuant to state law).

Accordingly, as Schwirzinski himself appears to concede (Doc. 8, p. 3), his Petition is barred by the statute of limitations. *See* § 2244(d).

**C. Schwirzinski is Not Entitled to Equitable Tolling**

Schwirzinski is unable to demonstrate that he is entitled to equitable tolling. A petitioner is entitled to equitable tolling when he has been pursuing his rights diligently and some extraordinary circumstance prevented him from timely filing his habeas petition. Holland v. Florida, 560 U.S. 631, 649 (2010) (citing *Pace*, 544 U.S. at 418). The petitioner bears the burden of establishing entitlement. Griffin v. Rogers, 308 F.3d 647, 653 (6th Cir. 2002).

Here, Schwirzinski was not diligent in pursuing his rights. He filed his Petition nearly a year and a half after the limitations period expired. Although he complains that his appellate counsel's "failure to file a timely appeal to the Ohio Supreme Court [] ultimately led to an untimely filing of this petition," Doc. 8, p. 3, he does not explain how counsel's failure to appeal to the Ohio Supreme Court prevented him from timely filing his Petition in this Court. Notably,

counsel notified Schwirzinski of counsel's failure to file an appeal to the Ohio Supreme Court in October 2012 and again in December 2012, and advised Schwirzinski to file a federal habeas petition by August 2013. *See* Docs. 8-1, p. 5; 9, p. 3. Yet, Schwirzinski did not file his Petition until January 2015. He also waited almost a year after his Rule 26(B) Application was denied before his filing his Petition. His professed lack of legal training (Doc. 12, p. 3) does not entitle him to equitable tolling. *See Fitts v. Eberlin*, 626 F.Supp.2d 724, 731, n.5 (N.D.Ohio 2009) (petitioner's lack of legal training does not toll the statute of limitations (collecting cases)). Thus, Schwirzinski did not act diligently in pursuing his rights; nor has some extraordinary circumstance prevented him from timely filing his habeas petition. *See Holland*, 560 U.S. at 649.

    Schwirzinski also argues that he is entitled to equitable tolling based on actual innocence. Doc. 8, pp. 4-8. A petitioner may be entitled to equitable tolling "if he demonstrates actual innocence so that by refusing to consider his petition due to timeliness the court would cause a fundamental miscarriage of justice." *Patterson v. Lafler*, 455 Fed. App'x 606, 609 (6th Cir. 2012) (citing *Murray v Carrier*, 477 U.S. 478, 495-496 (1986)). "A valid claim of actual innocence requires 'new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id*. (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). "The evidence must demonstrate factual innocence, not mere legal insufficiency." *Id*. (citing *Bousley v. United States*, 523 U.S. 614, 623 (1998)). The Supreme Court recently underscored that "the miscarriage of justice exception . . . applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted the petitioner.'" *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1933 (2013) (quoting *Schulp*, 513 U.S. at 329). The timing of an actual innocence claim "seriously undermine[s] the credibility" of such a claim. *Id*. at 1936.

13

Schwirzinski asserts that the DNA evidence presented at trial is not reliable and that his DNA expert was more credible than the state's DNA expert. Doc. 8, pp. 4-6. This argument fails because DNA evidence presented at trial does not constitute new evidence as required for a claim of actual innocence. *Schlup*, 513 U.S. at 324. Schwirzinski also contends that he has "newly discovered evidence not available at trial"—"[t]here was another little girl with the alleged victim the days and nights in which this alleged incident supposedly occurred." Doc. 8, p. 7. Schwirzinski states that the girl, who is his niece and is now twenty years old, was in California at the time of his trial and was not called to testify. Doc. 8, p. 7. He states that he received a letter from her on May 29, 2015, and attaches her affidavit to his brief in opposition. Docs. 8, pp. 7-8; Doc. 8-1, pp. 16-21. In her affidavit, Schwirzinski's niece avers that she slept in the same bed with the victim the night in question, did not leave the victim's side all night, that she is a light sleeper, and that Schwirzinski "couldn't have" touched the victim. Doc. 8-1, p. 20.

The affidavit from Schwirzinski's niece is not new evidence. If Schwirzinski's niece was with the victim during the relevant time period, as the affidavit asserts, Schwirzinski was aware that his niece was a witness at the time of his trial and her potential testimony is not "new evidence." See *Reid v. Moore*, 2009 WL 385756, at *3 (S.D. Ohio Feb. 13, 2009) (a witness who was not called at trial but whose existence was known is not "new evidence" contemplated by *Schlup*); *Rickard v. Jeffrey Wolfe, Warden*, 2007 WL 4526522, at *5 (N.D. Ohio Dec. 17, 2007) (facts underlying a newly presented affidavit from a witness were known to the petitioner at trial and were not new evidence).

Schwirzinski asserts that he raised his niece as a potential witness to his trial counsel but that counsel did not pursue her as a witness. Doc. 12, p. 7. He does not explain why he failed to present the issue of his niece as a potential witness to the state courts in any filings submitted

14

during the six year span between the time he was convicted up to the present time. Accordingly, the timing of his niece's affidavit seriously undermines the credibility of his claim. *McQuiggin v. Perkins*, 133 S.Ct. at 1936.

Finally, it cannot be said that the affidavit presents "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial[.]" *Id*. Evidence presented at trial included DNA evidence matching Schwirzinski from semen found on the victim's shirt, and testimony of the victim, her mother's fiancé, and the sexual assault nurse attending to the victim. Moreover, the affidavit from Schwirzinski's niece does not specify a date; witness testimony offered by Schwirzinski at trial describing events on June 11 and June 12, 2008, did not include mention of another girl staying with Schwirzinski on June 11 or June 12. *See, e.g.,* Doc. 5-7, pp. 74-75 (testimony of Schwirzinski's friend and neighbor describing Schwirzinski and the victim coming outside after waking up on the morning of June 12); pp. 93-94 (Schwirzinski's daughter-in-law testifying that Schwirzinski and the victim arrived and left her house on June 11 and June 12 without mention that another child arrived and left with Schwirzinski and the victim). Thus, Schwirzinski cannot show that it is more likely than not that a reasonable juror would not have convicted him. *See McQuiggin,* 133 S.Ct. at 1933.

For all these reasons, Schwirzinski has failed to demonstrate that he is entitled to equitable tolling. Accordingly, his Petition is time-barred.

### III. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Petitioner's habeas Petition should be **DISMISSED** as time-barred.

Dated: September 8, 2015

Kathleen B. Burke
United States Magistrate Judge

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).